**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Christa Walters, et al.,

      Plaintiffs,

   v.

Chad Stafford #185, et al.

      Defendants.

Case No. 1:05cv698

Judge Michael R. Barrett

**OPINION AND ORDER**

     Defendants, Gerald Martin, Chad Stafford, and the City of Hamilton, have moved for summary judgment (Doc. 47) on Plaintiffs' second amended complaint (Doc. 36)[1]. Plaintiffs filed a memorandum in opposition (Doc. 55) and Defendants replied (Doc. 58). This matter is now ripe for review.

    I.    BACKGROUND INFORMATION AND FACTS

     Plaintiffs' second amended complaint alleges seven claims: (1) wrongful arrest and detention; (2) unlawful search and state law invasion of privacy; (3) retaliation for exercise of First Amendment rights; (4) use of excessive and unreasonable force, and state law assault and battery; (5) loss of consortium; (6) punitive damages; and (7) municipal liability.

     The Plaintiffs were at the home of a friend, James Evan, in Hamilton, Ohio on October 31, 2003.  At some point in the evening, Plaintiffs decided to spend the night at Evan's house.  (C. Walters Depo. p 26-30; R. Walters Depo. p 17, 22; Evans Depo. p 30). After the Plaintiffs went to bed a disturbance occurred at the back of the home.  (Cox

---

[1]The parties filed a stipulation of partial voluntary dismissal of the state law claims in the first claim for relief.  See Doc. 52.

Depo. p 25-27; Evans Depo. p 31-33).  Due to recent disturbances and break-ins at the home Evans retrieved a firearm from inside the home, exited, and fired a shot in the air to disburse the disturbance.  (Evans Depo. p 21-23, 34-36; Cox Depo. p 20, 27-28). Unknown to Evans police officers were in the area and heard one gunshot.[2]  (Hurst Depo. p 29-30; Stafford Depo. I, p 31).  The officers radioed their dispatch that shots were fired. (Stafford Aff., ¶4).  Officer Stafford said the firearm was pointed at him. (Stafford Aff., ¶6). Evans denies this.  (Evans Depo. p 36-37, 54, 56-57)  In any event, the officers had no reason to believe they were fired upon.  (Hurst Depo. p 37-38).  Evans then returned inside, replaced the gun, and exited again unarmed.  Evans submitted to the custody of the officers without incident.  (Evans Depo. p 39-40, 68-69; Hurst Depo. p 38-46).  While being handcuffed Evans indicated that there were additional people in the home and weapons.  (Evans Depo. p. 46-47).

More officers arrived on the scene, including Lt. Martin, in response to the "shots fired" call.  After Evans was in custody, Officer Stafford performed a search of the home to secure it.  (Stafford Depo. I, p 45, Stafford Aff., ¶¶9-12).  During the search Officer Stafford announced himself and commanded all persons inside to exit.  (R. Walters Depo., p 24-25, 30; Stafford Aff. ¶10).  Lt. Martin was standing at the small back porch with his shotgun resting on the doorframe while Officer Stafford searched the home.  (Martin Depo., p16).

There is a dispute between the parties as to what occurred next.  Plaintiffs contend that several armed officers, including Stafford, woke the Plaintiffs and ordered them out

---

[2]Officer Stafford and Officer Hurst had previously been dispatched to an alarm call to a home behind Evan's home.

of their room and out of the house while pointing guns in their faces.  (C. Walters Depo., p 31-34).  Plaintiffs contend that they struggled to wake up, put on appropriate clothing, and in full submission to the officers' orders and without resistance, exited the bedroom. (C. Walters p. 33; R. Walters p. 28-29).

Officer Stafford contends that he first encountered Mr. Walters in the house and instructed him to exit.  He then contends that he next encountered Mrs. Walters in the kitchen wherein he told her to show her hands and go towards the door.  (Stafford Aff., ¶11).  Mr. Walters had exited in front of his wife and was in the yard on his knees while Mrs. Walters was approaching the exit.  (R. Walters Depo., p 29-30, 32-33).  The exit is a small doorway with virtually no porch or landing and immediately proceeds down narrow steep stairs with no handrail and a wall one side.  Lt. Martin was standing by this wall. (Martin Depo. I, p 26, 32; C. Walters Depo., p 55-56). Officer Stafford was behind Mrs. Walters as she was approaching the exit. (Stafford Depo. I, p 58).  As Mrs. Walters was approaching the exit, Lt. Martin was yelling "out, out, out" to her.  According to Plaintiffs, Mrs. Walters was possibly tentative. (C. Walters Depo., p 47-48, 56-57, 76).  Lt. Martin said she was hesitant and her actions made him suspicious and concerned since the weapon had not yet been located.  (Martin Depo., p17-22, 24-26).  Mrs. Walters asserts that she felt a "push" from behind and that Officer Stafford was the only one behind her.  (C. Walters Depo., p 47-49).  Officer Stafford denies pushing Mrs. Walters (Stafford Aff. ¶13). At the same time Mrs. Walters felt a push, Lt. Martin grabbed her and pulled her through the door. (Martin Depo. I, p 26-27).

Mrs. Walters then described herself as being "airborne" and "flying" through the door as she then landed on top of others in the yard. (C. Walters Depo., p 58-59; Cox Depo., p 40; Evans Depo., p 42).  As a result Mrs. Walters broke her wrist. (C. Walters Depo., p 47, 61.)  Mrs. Walters was required to remain on the ground in the rear yard until an ambulance eventually arrived to transport her to a hospital. (C. Walters Depo., p. 63-64, 66-67, 75-76; Stafford Depo. I, p 69-70).

Rick Walters was handcuffed and taken to the police station for questioning (R. Walters Depo., p 37-39).  He was not allowed to go to the hospital with his wife.  (C. Walters Depo., p 71; R. Walters Depo., p 36-37, 44).  Mr. Walters was told that he was not under arrest but was needed for questioning. (R. Walters Depo., 37-39, 42, 44).  Several hours later, Mr. Walters was released.  He did, however, have to find his own way to his car and the hospital to check on his wife. (R. Walters Depo., p 49-50).

After the house was cleared of people, Evans consented to a search of the home at which time the officers located the weapon used in the shooting.  No charges were filed against Mr. and Mrs. Walter; however, Evans was charged with aggravated menacing.  He later entered a guilty plea.  A mandatory "use of force" report was completed by Martin (Martin Depo. II, p 15, Pl. Ex. 12).

II.    LEGAL ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).   A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita*, 475 U.S. at 587. However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett, supra* at 322.   Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial.  *Id.* at 324.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986)(emphasis original).  Thus, the Supreme Court has stated that "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]" *Id*. at 252. Consequently, if the evidence presented by the non-moving party is not significantly probative, summary judgment is properly granted.  *Id*. at 249-250.

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. Anderson, 477 U.S. at 249-250. In so doing, the trial court does not have a duty to search the entire record

to establish that there is no material issue of fact. *Karnes v. Runyon*, 912 F.Supp.280, 283 (S.D.Ohio 1995)(Spiegel, J.). *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir.1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes*, 912 F.Supp. at 283. The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

A.    Municipal Liability.

42 USC § 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere.  *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985).  Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights.  *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001), *citing Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998) *and United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir.1992).

Municipalities may only be sued under Section 1983 for unconstitutional or illegal municipal policies, and not for unconstitutional conduct of their employees.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Center for Bio-Ethical Reform v. City of Springboro*, 477 F.3d 807, 818-819 (6th Cir. 2007).  It is also possible for municipalities to be sued under Section 1983 if they fail to adequately train their personnel such that a constitutional policy is applied in an unconstitutional way.   *Center for Bio-Ethical Reform*, 477 F.3d at 819 *citing City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  To bring a successful claim under this failure to adequately train theory, a plaintiff must show that "the

failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id. quoting City of Canton*, 489 U.S. at 388.

The only allegation as to the City of Hamilton in the second amended complaint is as follows: "The Defendant, City of Hamilton, is liable for the acts of its officers, by virtue of a custom, practice, or policy of the City of Hamilton condoning, permitting, encouraging, or allowing such policies and acts." Doc. 36, ¶45. Plaintiffs then argue that "Defendants' actions were taken pursuant to their training by the City and the Rules of the Police Department." Doc. 55, p37. However, the Plaintiffs fail to provide any support for these assertions. Plaintiffs only support for municipal liability is certain statements made by the individual defendants that they did what they were trained to do. This alone is not sufficient to show that a failure to train amounts to deliberate indifference to Plaintiffs' rights.

Plaintiffs fail to state which custom, practice or policy of the City's condones, permits, encourages or allows the alleged activities of the police officers. Instead, citing *Celotex Corp. v. Catrett*, 477 U.S. at 323, Plaintiffs assert that the City must come forth with affirmative evidence that it has no such policy. This Court disagrees with Plaintiffs assertion. A moving party does not need to support its motion with "materials negating the opponent's claim." *Id.* While interpreting Rule 56(c), the *Celotex* Court stated that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id.* at 323-324.

Plaintiffs acknowledge that "liability must be based on 'official policy'" and then argue that the official policy can be established through custom and/or the ratification of the actions of the officers by failing to investigate or discipline the officers involved.

In order for an act pursuant to custom to subject a municipality to liability, the custom must be so widespread, permanent, and well settled as to have the force of law. *Board of County Comm'rof Bryan County, Okl., v. Brown*, 520 U.S. 397, 404 (1997); *Doe v. Claiborne County, Tenn*., 103 F. 3d 495, 507-08 (6th Cir. 1996). To recover, a plaintiff must identify the policy, connect the policy to the political subdivision itself, and show that the particular injury was incurred because of the execution of that policy. *Board of County Comm'r of Bryan County, Okl., v. Brown*, 520 U.S. 397, 405 (1997); *Garner v. Memphis Police Dept*., 8 F. 3d 358, 364 (1993). Plaintiffs have failed to meet this standard.

In *Leach v. Shelby County Sheriff*, a paraplegic prisoner alleged that the county was deliberately indifferent to his serious medical needs. 891 F.2d at 1242. There was evidence of numerous instances of abuse of paraplegic or physically infirm inmates at the jail. *Id.* at 1247. Because the sheriff failed to investigate the incident and punish the responsible parties, the court found that there was a policy of deliberate indifference to the needs of these inmates. *Id.* at 1248.

As the Sixth Circuit has recently highlighted, the key to the finding of a municipal liability in *Leach* was that the court "was convinced that the municipality had a policy of deliberate indifference to prisoners' medical needs based on the fact that there were several separate instances where the prison failed to investigate prisoner mistreatment." *Thomas v. Chattanooga*, 398 F.3d 426, 434 (6th Cir. 2005). In *Thomas*, the court reiterated that "the plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference." *Id.*, *citing*, *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996).

As this Court has explained: "To show the existence of an offending custom or policy, plaintiffs must adduce specific facts supporting their claim; conclusory allegations are insufficient." *Games Galore of Ohio, Inc. v. Masminster*, 154 F.Supp.2d 1292, 1300 (S.D.Ohio 2001), *citing*, *Taylor v. Canton Police Dep't*, 544 F.Supp. 783 (N.D.Ohio 1982).

Thus, based upon the foregoing, Defendants' motion for summary judgment as to the claims against the City of Hamilton is GRANTED.

      B.     Wrongful Arrest and Detention.

           1.     Due Process

Plaintiffs claim that Defendants' conduct violated the Fourth Amendment and deprived them of their liberty without due process of law in violation of the Fifth and Fourteenth Amendments.  However, reliance upon the Due Process Clause is misplaced in this context because it is the Fourth Amendment that establishes protections in the criminal justice system.  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005).  The "Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interest always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases, including detention of suspects pending trial."  *Id.*, *quoting*, *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975).  Even though Plaintiffs were not charged criminally, the court finds that , based upon the facts of this case, the Due Process Clause does not mandate any additional safeguards beyond the Fourth Amendment.  *Id.*  Therefore, Defendants are entitled to

judgment on this claim as a matter of law.[3]

        2.    Wrongful Arrest and Detention/Qualified Immunity

Defendants assert that they are entitled to qualified immunity as to Plaintiff's Fourth Amendment claims. Qualified immunity will generally shield government officials from individual liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing Procunier v. Navarette*, 434 U.S. 555, 565 (1978).

The Supreme Court has typically employed a two-step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (*citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). However, the Sixth Circuit occasionally performs a third step in the qualified immunity analysis: "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). *See also Estate of Carter,* 408 F.3d at 311 n.2 ("[B]oth the two-step approach and the three-step approach can be said to capture the holding of [*Saucier* ].").

The Supreme Court since *Saucier* has continued to use the two-step approach to qualified immunity, but the Sixth Circuit has noted that "the three-step approach may in

---

     [3]This holding applies to each substantive due process claim set forth in the Second Amended Complaint unless otherwise addressed in this Order.

some cases increase the clarity of the proper analysis." *See Estate of Carter*, 408 F.3d at 311 n.2. If, on the other hand, the case at issue "is one of the many cases where, if the right is clearly established, the conduct at issue would also be objectively unreasonable," then this court has "collapse[d] the second and third prongs" in an effort to "avoid duplicative analysis." *Caudill v. Hollan*, 431 F.3d 900, 911 n.10 (6th Cir. 2005). The test is an objective standard, and the defendant's subjective intent is irrelevant. *Blake v. Wright*, 179 F.3d 1003, 1008 (6th Cir. 1999).

While defendant bears the burden of pleading the defense of qualified immunity, the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002), *citing*, *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir.1992). The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Id.*, *citing*, *Wegener v. Covington*, 933 F.2d at 392.

In viewing the facts in a light most favorable to the Plaintiffs, the Court finds that there was a constitutional violation. Defendants argue that there is no constitutional violation since contact with Plaintiffs was limited to the initial contact at the Evan's residence. Plaintiffs assert that their constitutional rights were violated when they were "forcibly ordered to get out of bed, leave their bedroom, and exit the residence without a warrant." (Doc. 55, p9). Plaintiffs further assert that they were not able to leave without police permission and they argue that the "detention was unreasonable since it was not 'the least intrusive means reasonably available to verify or dispel the officer's suspicions in a short period of time.'" (Id.)

-11-

The Fourth Amendment prohibits unreasonable searches and seizures. A "seizure" occurs when police detain an individual under circumstances where a reasonable person would feel that he or she is not at liberty to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). In *Terry v. Ohio*, 392 U.S. 1, 21 (1968), the Supreme Court held that a brief investigative stop by an officer who is "able to point to specific and articulable facts" that reasonably justify such an intrusion is not an unreasonable seizure. *Terry* is a narrowly drawn exception to the probable cause requirement of the Fourth Amendment that permits police officers to detain individuals briefly for investigative purposes. It requires a balancing of relatively minor intrusions against legitimate governmental concerns. *United States v. Obasa*, 15 F.3d 603, 606 (6th Cir. 1994) *citing Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). Courts must determine from the totality of the circumstances whether law enforcement had an objective and particularized basis for suspecting criminal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273-77 (2002); *United States v. Orsolini*, 300 F.3d 724, 728-29 (6th Cir. 2002). In other words, "we must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *United States v. Perez*, 440 F.3d 363, 370-371 (6th Cir. 2006) *quoting United States v. Smith,* 263 F.3d 571, 588 (6th Cir. 2001).

The second part of the *Terry* inquiry examines whether the stop was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Perez*, 440 F.3d at 372 *quoting Florida v. Royer*, 460 U.S. 491, 500 (1983). The investigative means used

should also be the least intrusive means reasonably available to verify or dispel the officer's suspicions in a short period of time. *Id.* The Supreme Court has rejected a rigid time limitation on the lawfulness of a *Terry* stop, and "emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Id. citing United States v. Sharpe,* 470 U.S. 675, 685 (1985).

There is not a dispute as to the initial underlying facts that caused the police officers to be at the property of Mr. Evans.  There was a disturbance nearby the home of Mr. Evans to which the police had responded.  Mr. Evans, unaware of the police presence, fired a gun into the air to displace those creating the disturbance.  The Police Officers heard the shot and then ordered Mr. Evans to  drop the weapon at which point he returned to his home. Mr. Evans subsequently returned outside without the weapon and was arrested without incident.  Once Mr. Evans was in custody, he was asked by Officer Stafford if anyone else was inside the house and if any weapons were inside the house. Mr. Evans answered in the affirmative to both questions.

According to the Defendants, Officer Stafford made a protective sweep of the house to remove other persons from the house since he knew there were other people in the house and the weapon which Evans had fired had not been recovered.[4]   Stafford announced "Hamilton Police" and entered the home.  Mr. Walters exited without incident. Mrs. Walters hesitated and was pulled and/or pushed out of the house.

As set forth above, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.  Viewing the facts in the light most

_____

[4]The constitutionality of this search will be addressed later in this opinion.

favorable to Plaintiffs, the "stop" was not a seizure as to Mrs. Walters but developed into a seizure as to Mr. Walters.  Mrs. Walters was pushed and/or pulled and sent "airborne" through the door of the house.  She landed on the ground and broke her wrist.  An attempt was made to handcuff Mrs. Walters, but due to her broken wrist she was not cuffed.  After about ten minutes, Mrs. Walters was told that an ambulance was on they way.  In fact, an ambulance arrived and took her to the hospital approximately thirty minutes after she was removed from the house.  This detention is not unreasonable in light of the circumstances.

However, as to Mr. Walters, once he was removed from the house he was handcuffed and ordered to remain on the lawn.  He was not permitted to ride in the ambulance with this wife.  Despite assertions from the officers that he was not under arrest, Mr. Walters was then placed in the back of a police car and taken to the police station.  There Mr. Walters was interviewed as part of the police investigation.  Several hours elapsed from the time the police removed the Plaintiffs from the home until Mr. Walters was free to leave the police station.  He was told that he was free to leave upon the completion of the police interview.  A reasonable jury could find that this seizure far exceeded the time necessary to conduct an investigation and amounted to an arrest in violation of the Fourth Amendment.

The next step in the qualified immunity analysis is to determine if the constitutional right that was violated was clearly established.  The Fourth Amendment right to be free from unreasonable search and seizure is clearly established.  *United States v. Morgan*, 743 F.2d 1158, 1161 (6th Cir. 1984) *citing Payton v. New York*, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980).  Furthermore, a reasonable person in the Defendants'

position would have known that his actions violated clearly established rights. See *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

Since the Fourth Amendment rights are those that constitute being "clearly established" the conduct of the Defendants is deemed to be objectively unreasonable and the Court will "collapse the second and third prongs" of the qualified immunity test. *See Caudill v. Hollan*, 431 F.3d at 911 n.10.

Therefore, the motion for summary judgment of Officer Stafford and Lt. Martin is DENIED as to their assertion of qualified immunity and to the issue of the constitutional violation pertaining to Mr. Walters but is GRANTED as to Mrs. Walters claim of unlawful arrest and detention. Furthermore, Defendants' motion is GRANTED as to Plaintiffs' Fifth and Fourteenth Amendment claims.

      C.     Unlawful Search/Invasion of Privacy

          1.     Unlawful Search

A police officer's entry into a home without a warrant is presumptively unconstitutional under the Fourth Amendment except where "exigent circumstances exist. *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992). Federal courts have traditionally found exigent circumstances in the following three instances: (1) when the officers were in hot pursuit of a fleeing suspect; (2) when the suspect represented an immediate threat to the arresting officers and public; (3) when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals. *United States v. Morgan*, 743 F.2d 1158, 1162-63 (6th Cir. 1984), cert. denied, 471 U.S. 1061, 85 L. Ed. 2d 490, 105 S. Ct. 2126 (1985). The critical time for determining whether exigency

exists "is the moment of the warrantless entry by the officers" onto the premises of the defendant. *Id. quoting United States v. Killebrew*, 560 F.2d 729, 733 (6th Cir. 1977).

"In a civil action, the determination of whether exigent circumstances exist is properly resolved by the jury." *Hancock v. Dodson*, 958 F.2d at 1375 (internal cites omitted). However, where the underlying facts are essentially undisputed, and where a finder of fact could reach but one conclusion as to the existence of exigent circumstances, the issue may be decided by the trial court as a matter of law. *Id.*

It is clear that the officers were not in hot pursuit of a fleeing suspect since the suspect was already in custody nor were they attempting to thwart the escape of a known criminal. However, there is a question of fact as to whether or not the there was an immediate threat and whether immediate police action was necessary to prevent the destruction of vital evidence. To satisfy the "immediate threat" exception "the government must show that there was 'a serious and demonstrable potentiality for danger.'" *United States v. Morgan*, 743 F.2d at 1162-1163 *quoting United States v. Kolodzeij*, *supra*, 706 F.2d 590, 596 (5th Cir. 1983).

Here, the issue must be one decided by a jury as there is a question of fact as to whether or not there were exigent circumstances. Plaintiffs argue that there were not exigent circumstances since the officers had the person responsible for discharging a firearm in custody. Plaintiffs further argue that there was not any criminal activity that was taking place inside the home. The Defendants counter that the officers had a need to

secure the area for their safety and the safety of others since they knew there were people inside the house and firearms inside the house.[5]

Based upon the foregoing, summary judgment on the issue of the unlawful search is DENIED. Furthermore, for the same reasons set forth above in Section B, the Defendants are not entitled to qualified immunity.

2.      Invasion of Privacy

Ohio law recognizes a cause of action for invasion of privacy in cases of (1) "the unwarranted appropriation or exploitation of one's personality," (2) "the publicizing of one's private affairs with which the public has no legitimate concern," or (3) "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Sustin v. Fee*, 69 Ohio St. 2d 143, 145 (1982).

Here, Plaintiffs' privacy claim is solely for wrongful intrusion. This theory limits liability to intentional intrusions that would be "highly offensive to a reasonable person." *Id.* In addition, if the party who is alleged to have wrongfully invaded another's privacy is a public official who is acting within the scope of his or her official duties, the plaintiff must allege "that the public official acted in bad faith or with a corrupt motive before liability can attach." *Id* at 146.

Plaintiffs have presented no evidence that Defendants acted in bad faith or with a corrupt motive. Therefore, summary judgment as to Plaintiffs' invasion of privacy claim is

---

[5]After the occupants of the house were vacated, Mr. Evans consented to a search wherein the firearm was located. This second search is not the subject of Plaintiffs' complaint.

GRANTED.

      D.     Retaliation for Exercise of First Amendment Rights

Plaintiffs' allege that they were retaliated against for exercising their first amendment rights.  In essence, Plaintiffs allege that their respective comments made after Mrs. Walters was injured and inquiring as to what was happening was, at least in part, the reason for the police action.  The burden is on the Plaintiffs to show that they were engaged in protected activity, that the Defendants took adverse action against them that would deter a person of ordinary firmness from continuing to engage in that conduct, and, that the adverse action was motivated at least in party by the Plaintiffs protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999); *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998).  Mrs. Walters has  failed to meet this burden.  She has shown no adverse action that was taken against her.   Her protected speech was made <u>after</u> she was injured and then she subsequently was taken to the hospital.  Plaintiff was told within ten minutes of her injury that an ambulance was on the way.

However, a question of fact remains as to Mr. Walter's claim of retaliation.  First, his statements to the Officers were protected speech.   Second, the adverse action taken against him was that he was held by the police for several hours and prohibited from going to the hospital with his wife.  This adverse action would likely deter an ordinary person from engaging in this conduct.  Finally, a reasonable jury could determine that the Defendants actions were, at least in part, motivated by Mr. Walters speech.

Thus, Summary Judgment is GRANTED as to Mrs. Walter's retaliation claim and DENIED as to Mr. Walter's retaliation claim.

E.    Use of Excessive and Unreasonable Force/Free From Cruel and Unusual Punishment/Assault and Battery.

1.    Use of Excessive and Unreasonable Force

Although this Court held above that Mrs. Walters was not improperly seized by the police, this claim will be analyzed under the Fourth amendment as force was used in the course of an "investigatory stop". *See Graham v. Connor*, 490 U.S. 386, 395 (U.S. 1989)("...all claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach").

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. at 396. This determination must also be made "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Id.* at 397. Mrs. Walters asserts that Officer Stafford pushed her through the door, which he denies. Lt. Martin acknowledges that he pulled Mrs. Walters through the door. Whether Mrs. Walters was pushed and/or pulled through the door is a question of fact for a jury to determine. However, regardless of whether she was pushed and/or pulled, Mrs. Walters has presented evidence that she was "flying" through the air, landed on the ground on top of other individuals, and severely injured her wrist, requiring surgery. Whether or not the force used by the Defendants was excessive is a question for the jury to determine. Thus, summary judgement is DENIED. Additionally, for the reasons set forth above in Sections B and C, Defendants are not entitled to qualified immunity.

2. Cruel and Unusual Punishment

Plaintiff Mrs. Walters also brings a claim under the Eighth Amendment for cruel and unusual punishment.  The United States Supreme Court in *Deshaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 199 n6 (U.S. 1989) held that "The Eighth Amendment applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'" *citing Ingraham v. Wright,* 430 U.S. 651, 671-672, n. 40 (1977); *see also Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983); *Bell v. Wolfish*, 441 U.S. 520, 535, n. 16 (1979).  Thus, since Mrs. Walters was not charged with a crime, let alone convicted, summary judgment must be GRANTED.

3. Assault and Battery

Plaintiff Mrs. Walters also asserts a claim of assault and battery against both Officer Stafford who she claims pushed her and Lt. Martin who admits he pulled her.  Defendants argue that this claim is barred by the applicable statute of limitations that requires such a claim to be brought within one year.  See O.R.C. §2305.1111(B).  Plaintiff responds that the statute did not begin to run until discovery of the identity of the perpetrator citing O.R.C. §2305.111(B)(1).  The underlying incident occurred on November 1, 2003.  This action was instituted on October 27, 2005.  At the time the action was instituted, Plaintiff knew of Officer Stafford as he was named in the original complaint along with "John/Jane Does".  Based upon the fact that this action was filed almost two years later and that Plaintiff knew of one of the defendants by name and also names John Doe, the Court finds that this claim

is barred. Defendants motion for summary judgment on the state law assault and battery claim is GRANTED.

F.     Loss of Consortium

This issue has not been addressed by either party. Thus, the claim survives for trial.

G.     Punitive Damages

Plaintiffs have submitted evidence that Mrs. Walters was pushed from behind by Officer Stafford and that Lt. Martin admitted to pulling her. It is for a jury to decide if these acts occurred and, if so, if the conduct of the Defendants amounts to recklessness or callous indifference. *See Smith v. Wade*, 461 U.S. 30 (1983).

H.     Lt. Martin

Defendants argue that any claims against Lt. Martin should be barred by the applicable statute of limitations which is two years from the event giving rise to the claim. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). Plaintiffs argue that the discovery rule is applicable and that the statute began to run from the time that the Defendants provided information as to Lt. Martin's involvement. In addition, the Complaint and First Amended Complaint each included John Does. Moreover, Lt. Martin was on notice of the litigation from the time of its filing. As such, the Court finds that Plaintiffs claims are not barred.

III.     <u>CONCLUSION</u>

Based upon the foregoing, Defendants' motion for summary judgment is hereby GRANTED, in part, and DENIED, in part.

**IT IS SO ORDERED.**

                                  s/Michael R. Barrett
                                 Michael R. Barrett, Judge
                                 United States District Court